IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| JAMES MIKE DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | No. 1:11-0041 |
| | ) | Chief Judge Haynes |
| v. | ) | |
| | ) | |
| MARSHALL COUNTY | ) | |
| AMBULANCE SERVICES, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM**

Plaintiff, James Mike Davis, an emergency medical technician, filed this action under the federal question statute, 28 U.S.C. § 1331, against the Defendant, Marshall County Ambulance Services, his former employer. Plaintiff asserts claims that Defendant's termination of his employment violated his due process rights under the Fourteenth Amendment as a public servant, violated the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101 et seq and violated public policy against age discrimination and sickness. Id.

Before the Court is the Defendant's motion for summary judgment (Docket Entry No. 21), contending, in sum, that the undisputed facts reflect that the Plaintiff's claims lack merit as Plaintiff was fired for a legitimate, non-discriminatory, and non-retaliatory reason, persistent absenteeism. (Docket Entry No. 23). Plaintiff responds that the Defendant's stated reasons for his termination are pretextual and Plaintiff was a public employee paid by Marshall County and entitled to civil service protection. (Docket Entry No. 34).

## A. FINDINGS OF FACT[1]

The Marshall County Emergency Medical Service ("MCEMS") employed Plaintiff, James Mike Davis, as an emergency medical technician ("EMT") from 1999 to 2006. (Docket Entry No. 35, ¶ 1). Davis left the employment of MCEMS in 2006 to seek employment elsewhere, but returned in 2007. Id. As a full-time EMT for Marshall County, Plaintiff was on duty for 24 hours, then off for 48 hours, for a total of ten work days per month. (Docket Entry No. 25, Calahan Declaration, ¶ 3). EMTs are allowed five sick days and two "emergency" days per year. Id.

On September 26, 2008, Plaintiff received a written reprimand for repeated absences citing "[Plaintiff's] repeated absence from work creates a strain on our service. Mike has an absence rate at 20% for the first nine months of this year." (Docket Entry No. 22, Deposition Exhibit No. 6, p.1). On March 5, 2010, Plaintiff received a written reprimand with suspension for his abuse of sick leave days (Docket Entry No. 22, Deposition Exhibit No. 5, p. 1). According to the March 5th reprimand, Plaintiff "called Dispatch and told [redacted] that he wouldn't be in today...He made statement of he wasn't really sick, he had a lot of stuff to do today." Id. This reprimand also stated, "[i]f there is continued abuse of leave it may result in termination." Id.

Plaintiff later called in sick on one or more occasion when he was out of gas in his vehicle or his vehicle was broken down (Docket Entry No. 25, Calahan Declaration, ¶ 8). Plaintiff called in

---

[1] Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 f.2d 43, 46 (6th Cir. 1986) app. 840 f.2d 16 (6th Cir. 1988) (unpublished opinion). As will be discussed infra, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for directed verdict, Anderson v. Liberty Lobby, 477 U.S. 242, 247-52, 106 S.Ct. 2502, 91 L.Ed.2d 202 (1986), particularly where there has been an opportunity for discovery. Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265, 276 (1986). The Court concludes that there are some factual disputes, but the Court concludes that those disputes are not material given the material facts conceded by the Plaintiff. Thus, this section constitutes findings of fact under Fed.R.Civ.P. 56(d).

sick on February 7, 2011, stating that he had the flu. (Docket Entry No. 22, Deposition Exhibit No. 2, p 47-8).

MCEMS terminated Plaintiff's employment on February 10, 2011 (Docket Entry No. 22, Deposition Exhibit No. 2, p. 50). According to MCEMS personnel, this termination was a result of Plaintiff's excessive absenteeism. (Docket Entry No 25, Calahan Declaration, ¶ 6). Plaintiff was 49 years old at the time of his termination. (Docket Entry No. 22, Plaintiff Deposition, p. 48). Plaintiff's vacant EMT position was filled by Phillip Bennet, who was 39 years old at his hiring. (Docket Entry No. 25, Calahan Declaration ¶ 12).

## B. CONCLUSIONS OF LAW

Motions for summary judgment are governed by Federal Rule of Civil Procedure 56. "The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Fed. R. Civ. P. 56 advisory committee notes. Moreover, "district courts are widely acknowledged to possess the power to enter summary judgment sua sponte, so long as the opposing party was on notice that she had to come forward with all of her evidence." Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986); accord Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

In Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment `shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that

3

there be no <u>genuine</u> issue of <u>material</u> fact.

<u>As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment</u>. Factual disputes that are irrelevant or unnecessary will not be counted.

Id. at 247-48 (emphasis in the original and added in part). Earlier the Supreme Court defined a material fact for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Electrical Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citations omitted).

A motion for summary judgment is to be considered after adequate time for discovery. Celotex, 477 U.S. at 326. Where there has been a reasonable opportunity for discovery, the party opposing the motion must make an affirmative showing of the need for additional discovery after the filing of a motion for summary judgment. Emmons v. McLaughlin, 874 F.2d 351, 355-57 (6th Cir. 1989); see also Routman, 873 F.2d at 971.

There is a certain framework in considering a summary judgment motion as to the required showing of the respective parties as described by the Celotex Court:

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. . . . [W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

477 U.S. at 323 (emphasis deleted).

As the Sixth Circuit explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards." Martin v. Kelley, 803 F.2d 236, 239 n. 4 (6th Cir. 1986). The moving party's burden is

to show "clearly and convincingly" the absence of any genuine issues of material fact. Sims v. Memphis Processors, Inc., 926 F.2d 524, 526 (6th Cir. 1991) (quoting Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of 'demonstrat[ing] the absence of a genuine issue of material fact,' the nonmoving party then 'must set forth specific facts showing that there is a genuine issue for trial.'" Emmons v. McLaughlin, 874 F.2d 351, 353 (6th Cir. 1989) (quoting Celotex, 477 U.S. at 322 and Rule 56(e)).

Once the moving party meets its initial burden, the Sixth Circuit warned that "[t]he respondent must adduce more than a scintilla of evidence to overcome the motion. . . . [and] must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989)(quoting Liberty Lobby, 477 U.S. at 251, 255). Moreover, the Sixth Circuit explained that

> The respondent must 'do more than simply show that there is some metaphysical doubt as to the material facts.' Further, '[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is 'implausible.'

Street, 886 F.2d at 1480 (citations omitted); see also Hutt v. Gibson Fiber Glass Products, 914 F.2d 790 (6th Cir. 1990) (quoting Liberty Lobby, 477 U.S. at 151-52) ("A court deciding a motion for summary judgment must determine 'whether the evidence presents a sufficient disagreement to require a submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.").

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law.

More important for present purposes, <u>summary judgment will not lie if the dispute</u>

about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.

\* \* \*

Progressing to the specific issue in this case, we are convinced that the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits. If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict -- 'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.'

Liberty Lobby, 477 U.S. at 248, 252 (citations omitted and emphasis added).

It is likewise true that

[I]n ruling on motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated. It has been stated that: 'The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute. . . .'

Bohn Aluminum & Brass Corp. v. Storm King Corp., 303 F.2d 425, 427 (6th Cir. 1962) (citation omitted). As the Sixth Circuit stated, "[a]ll facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion." Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986) (citation omitted).

The Sixth Circuit further explained the District Court's role in evaluating the proof on a summary judgment motion:

A district court is not required to speculate on which portion of the record the

nonmoving party relies, nor is it obligated to wade through and search the entire
record for some specific facts that might support the nonmoving party's claim.
Rule 56 contemplates a limited marshalling of evidence by the nonmoving party
sufficient to establishing a genuine issue of material fact for trial. This
marshalling of evidence, however, does not require the nonmoving party to
"designate" facts by citing specific page numbers. Designate means simply "to
point out the location of."

Of course, the designated portions of the record must be presented with enough
specificity that the district court can readily identify the facts upon which the
nonmoving party relies; but that need for specificity must be balanced against a
party's need to be fairly apprised of how much specificity the district court
requires. This notice can be adequately accomplished through a local court rule or
a pretrial order.

InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989) (citation omitted). In this district, the parties must provide specific references to the proof upon which they rely. See Local Rule 56.01(c) (requiring each party to provide a statement of undisputed facts to which the opposing party must respond).

In Street v. J.C. Bradford & Co., 886 F.2d 1472 (6th Cir. 1989), the Sixth Circuit discussed the trilogy of leading Supreme Court decisions, and other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions

    1.       Complex cases are not necessarily inappropriate for summary judgment.

    2.       Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

    3.       The movant must meet the initial burden of showing 'the absence of a genuine issue of material fact' as to an essential element of the non-movant's case.

    4.       This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

    5.       A court should apply a federal directed verdict standard in ruling on a

motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: `whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that the party must prevail as a matter of law.'

6. As on federal directed verdict motions, the `scintilla rule' applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.

7. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8. The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must `present affirmative evidence in order to defeat a properly supported motion for summary judgment.'

9. The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10. The trial court has more discretion than in the `old era' in evaluating the respondent's evidence. The respondent must `do more than simply show that there is some metaphysical doubt as to the material facts.' Further, `[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is `implausible.

Id. at 1479-80.

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) whether the moving party "clearly and convincingly" established the absence of material facts; (2) if so, whether the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense; (3) if factual support is presented by the nonmoving party, whether those facts are sufficiently plausible to support a jury verdict or judgment under the applicable law; and (4) whether there are any genuine factual issues with

8

respect to those material facts under the governing law? As the moving party in this action, the Defendant bears the burden of "clearly and convincingly" establishing the absence of material facts in Plaintiff's complaint. Sims, 926 F.2d 526 (6th Cir. 1991).

For his public policy claim, Plaintiff "must point to a clear mandate of public policy, evidenced by an unambiguous constitutional, statutory, or regulatory provision, which [defendant] violated when it discharged [him]." Stein v. Davidson Hotel Co., 945 S.W.2d 714, 717 (Tenn. 1997). For such claims, the Court is not to "engage in hypothetical guessing to fashion public policy...Tennessee courts do not, in the context of wrongful discharge actions, attempt to discern public policy from the common law." Id. See e.g., Reynolds v. Ozark Motor Lines, Inc., 887 S.W.2d 822, 823 (Tenn. 1994). Plaintiff alleges that "[t]erminating Plaintiff for not working while contagious with the flu is in direct violation of Tennessee public policy." (Docket Entry No. 1, ¶ 20). Plaintiff does not cite a "constitutional, statutory, or regulatory provision" of the Tennessee code or constitution to support this claim. Stein, supra Thus, Plaintiff's public policy claim on sickness fails "to state a claim upon which relief can be granted" and should be dismissed.

Plaintiff's public policy claim based on age discrimination is considered in the analysis of his THRA claim. As to Plaintiff's procedural due process claim for his discharge without a proper hearing, Defendant contends "Plaintiff is an at-will employee who had no civil service rights" (Docket Entry No. 1, ¶ 26)(Docket Entry No. 23) (citing Docket Entry No. 25, Calahan Declaration, ¶ 4, and Docket Entry No. 22, Plaintiff Deposition, p. 44).

An individual may have a "property" interest in public employment Board of Regents v. Roth, 408 U.S. 564, 577 (1972). As the Sixth Circuit explained: "[a] person's interest in a benefit

is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing." Gregory v. Hunt, 24 F.3d 781, 784 (6th Cir. 1994) (quoting Perry v. Sindermann, 408 U.S. 593, 601 (1972)). For this claim, a plaintiff must prove an interest in continued public employment, and state law defines the property interest. Brown v. City of Niota, Tennessee, 214 F.3d 718, 721 (6th Cir. 2000)(citing Roth, supra). Plaintiff has not cited any state or local law that confirms his reasonable expectation of continued employment. Plaintiff cites county funding, but does not cite any state law recognizing funding as evidence of a reasonable expectation of continued employment.

Tennessee's at-will employment doctrine "has long recognized...the mutual right of either party to terminate such a relationship with or without cause." Brown at 721; Bennett v. Steiner-Liff Iron and Metal Co., 826 S.W.2d 119, 121 (Tenn 1992). Thus, a presumption arises that an employee is an employee at will. Rose v. Tipton County Public Works Dept., 953 S.W.2d 690, 691-2 (Tenn. Ct. App. 1997). "An at-will public employee does not have a property interest in continued employment unless it can be shown that the employee had a reasonable expectation that termination would be only for good cause." Gregory, 24 F.3d at 785. Tennessee courts recognize that an at-will contract may, under certain circumstances, be modified by specific language evidencing an intent to modify the existing employment relationship. Brown at 721. However, "unless there is a contract of employment for a definite term, a discharged employee may not recover against an employer because there is no right to continued employment." Cantrell v. Knox County Board of Education, 53 S.W.3d 659, 662 (Tenn. 2001).

In his deposition, Plaintiff testified that he understood himself to be "an at will employee

10

at MCEMS." (Docket Entry No. 22, Deposition of Plaintiff, p. 44). Plaintiff recognized he could be terminated for good cause. Plaintiff has not presented any employment contract or other evidence that would support an allegation that the employment relationship was modified from an at-will employment to a for-cause employment relationship. Without any evidence to the contrary that Plaintiff was an at-will employee, the Court concludes that the Plaintiff did not have a property interest in his employment. Thus, Plaintiff was not entitled to a due process hearing proceeding his dismissal.

Plaintiff's third claim is that he was fired due to his age in violation of the Tennessee Human Rights Act ("THRA"). (Docket Entry No. 1, ¶ 32). To establish a *prima facie* action of age discrimination under the THRA, Tennessee applies the standards under the federal Age Discrimination in Employment Act. Moore v. Nashville Elec. Power Bd, 72 S.W.3d 643, 651 (Tenn. Ct. App. 2001). Tenn. Code Ann. § 4-21-307. The Plaintiff must prove that he was (1) at least 40 years of age, (2) discharged, (3) qualified for the position held, and (4) replaced by a substantially younger person, or treated less favorably than a similarly situated employee from outside the protected class. Id. at 651-52.

Plaintiff was 49 years old on the date he was dismissed. (Docket Entry No. 22, Plaintiff Deposition, p. 48). Plaintiff's vacant EMT position was filled by Phillip Bennet, who was 39 years old at the time he was hired. (Docket Entry No. 25, Calahan Declaration ¶ 12). "The overwhelming body of cases in most circuits has held that age differences of less than ten years are not significant enough to make out the fourth part of the age discrimination prima facie case". Grosjean, 349 F.3d at 338. Plaintiff was replaced by an individual who was exactly ten years younger than he, which is potentially significant enough of an age difference to satisfy the fourth prong of the *prima facie*

11

action for age discrimination. With all inferences "in a light most favorable to the party opposing the motion," the Court deems Plaintiff's replacement by a substantially younger person to the position for which Plaintiff held qualifies as a *prima facie* showing of age discrimination. Duchon, 791 F.2d at 46.

With the *prima facie* showing, the Defendant must state a legitimate and nondiscriminatory reason for its termination. Tenn. Code Ann. § 4-21-311. The Defendant's reason is Plaintiff's extensive absenteeism. (Docket Entry No. 22, Plaintiff's Deposition Exhibit 1, 2). With this evidence of absenteeism, "the burden shifts to the plaintiff to demonstrate that the reason given by the defendant was not the true reason for the challenged employment action and that the stated reason was a pretext for illegal discrimination or retaliation." Id.

As evidence of his age discrimination claim, Plaintiff submitted the employee records of another employee, Alicia Jones, who was younger than the Plaintiff and had comparable absenteeism to him, but she was not fired for her absenteeism. (Docket Entry No. 36, Alica Jones File). In response, the Defendant asserts Jones' age of 40 did not qualify her as being "significantly younger" than Plaintiff, who was age 49. (Docket Entry No. 39, p. 3) (Docket Entry No. 22, Platiniff's Deposition, p.48). Defendant also cites that Ms. Jones' had a different direct supervisor than Plaintiff and this likely influenced the manner in which her absenteeism was handled. Id. Finally, the Defendant cites Jones' voluntarily resignation in lieu of dismissal. (Docket Entry No. 25, Calahan Declaration, ¶ 11).

In his deposition, Plaintiff was asked, "Is it fair to understand there were never any statements about age that would have indicated that that was a reason for your dismissal from any your supervisors?" (Docket Entry No. 21, Plaintiff's Deposition, p. 47). Plaintiff responded, "None that

I can remember. It was more or less just, you know, me trying to figure out what was going on and a personal assumption." Id. This statement, coupled with Jones' records, does not satisfy Plaintiff's burden of demonstrating that the reason given by the Defendant for Plaintiff's dismissal was a pretext for illegal age discrimination. Thus, the Court concludes Plaintiff's proof of age discrimination does satisfy his burden of proof under Tenn. Code Ann. § 4-21-311, and this claim should be dismissed.

Plaintiff's fourth claim is a retaliation claim based on the fact that "[d]efendant was aware of Plaintiff's illness, as he provided documentation to the Defendant from his physician stating that he was to be off due to the contagious illness." and "[b]ecause Plaintiff needed to be off from work, Defendant took adverse employment action against him in the form of termination." (Docket Entry No. 1, Complaint of Plaintiff, ¶¶ 37-38). Plaintiff alleges that "[b]y refusing to work while contagious, Plaintiff engaged in a protected activity." Id. at ¶ 36.

A Tennessee common law claim for retaliatory discharge requires the plaintiff to show that (1) an employment at-will relationship existed; (2) plaintiff was discharged; (3) the reason for his discharge was that he attempted to exercise a statutory or constitutional right, or any other right which violates a clear public policy evidenced by an unambiguous constitutional, statutory, or regulatory provision; (4) that a substantial factor in [defendant's] decision to discharge plaintiff was his exercise of protected rights or compliance with a clear public policy. Foust v. Metropolitan Sec. Services, Inc., 829 F.Supp.2d 614, 635 (2011). See also Crews v. Buckman Labs International, Inc., 78 S.W.3d 852, 862 (Tenn. 2002).

In his complaint and proof, Plaintiff fails to identify his exercise of "a statutory or constitutional right, or any other right which violates a clear public policy." Id. The Court is unaware

of any statutory or constitutional right of an individual to refuse to work while "contagious." Moreover, the Tennessee Governmental Tort Liability Act precludes a claim of "common law tort of retaliatory discharge." Baines v. Wilson County, 86 S.W.3d 575, 579 (Tenn. App. 2002). See also T.C.A. § 29-20-201(a). Thus, this Court concludes that this claim lacks merit and should be dismissed.

For these reasons, the Court concludes that the Defendant's motion for summary judgment (Docket Entry No. 21) should be granted.

An appropriate Order is filed herewith.

**ENTERED** this 22nd day of October, 2012.

WILLIAM J. HAYNES, JR.
Chief Judge United States District Court